UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MONIQUE THOMPSON,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>FATHOM CREATIVE, INC.,<br><br>Defendant/Counter-Plaintiff. | Civil Action No. 08-1841 (JDB) |

MEMORANDUM OPINION

Plaintiff/Counter-Defendant Monique Thompson ("Thompson") filed an action against Defendant/Counter-Plaintiff Fathom Creative, Inc. ("Fathom"), alleging failure to pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1003, and the District of Columbia Wage Payment and Collection Act, D.C. Code §§ 32-1302-3. Thompson further alleges a failure to provide continuation health care coverage under the District of Columbia Health Continuation Coverage Act, D.C. Code § 32-731. Fathom filed counterclaims against Thompson for tortious conversion and breach of fiduciary duty. Fathom alleges that Thompson unlawfully converted Fathom's funds by misappropriating them for her own use, misusing her corporate credit card, refusing to return company property, and failing to pay her portion of her health insurance premiums. Countercl. ¶ 105. Fathom also alleges that Thompson breached her fiduciary duty owed to Fathom by these same actions, as well as by creating false time records. Id. ¶ 111.

Now before the Court is Thompson's motion to dismiss, or in the alternative, for summary judgment on Fathom's counterclaims. Thompson argues that Fathom has not

established that her control over its funds was unlawful and that her actions fell within the scope of her duties as a fiduciary to Fathom. See Thompson Reply at 12-16. Because discovery has not occurred, summary judgment on the counterclaims is premature at this time, and Thompson's motion will therefore be denied.

## BACKGROUND

In June 2005, Fathom offered Thompson a position as a part-time Bookkeeper/ Administrator. Countercl. ¶ 1. According to Fathom, the offer included a salary of $35,000 per year and an opportunity to join Fathom's health and dental plan; Thompson accepted the offer. Id. ¶¶ 2-4; see also Fathom Ex. C. Fathom agreed to pay half of Thompson's monthly premium payment for the company's health and dental plan. Fathom Ex. C. Thompson alleges different terms of employment than those outlined by Fathom. See Thompson Mem. at 2. In particular, Thompson's version of Fathom's offer letter contains a salary of $36,500 per year, a definition of "part time" as "twenty hours per week," and an agreement that Fathom would pay for Thompson's personal health insurance premiums. Thompson Ex. 1. Thompson also claims that Fathom agreed to pay for all of her health benefits when she initially joined Fathom's plan in 2006, and, later in her employment, for part of her benefits. Thompson Mem. at 2.

Fathom alleges that Thompson's daily job responsibilities included managing Fathom's bank and credit accounts, and were often performed without the express approval of Fathom. Fathom Statement of Material Facts in Dispute ("SOF") ¶¶ 5-11. Thompson was also issued a corporate American Express card for which Fathom paid the bill. Countercl. ¶¶ 10-11. Fathom further argues that only when Fathom president Drew Mitchell's confidence in Thompson had started to deteriorate did he require Thompson to seek his approval before signing any checks.

Fathom SOF ¶ 12.  Thompson, on the other hand, claims that she had different job responsibilities that did not include a financial management role.  Thompson Mem. at 2.  She also claims that she conducted every transaction, financial or otherwise, under the express authorization of Mitchell, obtained through one-on-one weekly meetings.  Id. at 3-4.  Mitchell denies these regular weekly meetings occurred except near the end of Thompson's employment, when Mitchell requested to meet with Thompson because of his concerns about her work.  Fathom SOF ¶ 8.

Fathom further alleges that during her employment, Thompson did not conform with Fathom's timekeeping procedures, and that the unauthorized time records she did keep contradicted Fathom's own records.  See Countercl. ¶¶ 12-29.  Thompson counters that Mitchell authorized all of her nonconforming timekeeping procedures, and that some irregularities can be explained by technical difficulties with Fathom's timekeeping database.  Thompson Mem. at 4.

Initially, Fathom agreed to pay Thompson by check directly from Fathom's account.  Fathom SOF ¶ 17.  At some point during her tenure at Fathom, Thompson began paying herself through wire transfers into her own bank accounts.  Countercl. ¶¶ 34-35.  Fathom alleges that despite two pay raises in January 2007 and April 2007, Thompson overpaid herself by over $30,000 during her time at the company.  See id. ¶¶ 36-54.  Fathom also asserts that Thompson opened an unauthorized "Pay Pal" account in Fathom's name to send and receive electronic payments through the Internet.  Id. ¶¶ 58-62.  Fathom claims that Thompson diverted company funds into her own bank account via this unauthorized Pay Pal account.  Id. ¶¶ 63-67.  Thompson, on the other hand, argues that any transfers she made were expressly authorized by Mitchell and that, despite these transfers, Fathom still owes her unpaid overtime wages.  See

Thompson Mem. at 4-6.  Thompson offers evidence of Fathom's approval of one such transfer outside of Fathom's January and April 2007 pay raises made to compensate Thompson for "overages."  Thompson Ex. 32.

In September 2007, Fathom funded a two-day company retreat at the Ritz Carlton hotel in San Juan, Puerto Rico.  Countercl. ¶¶ 68-69.  Fathom claims that Thompson charged the total cost of her own six-night stay on her corporate American Express card, as well as the stay of her friend, Kristal Shipp, and the extended stay of two other Fathom employees.  Id. ¶¶ 73-85.  Fathom was never reimbursed for these charges.  Id. ¶ 86.  Thompson argues that the charges were accidental and that she believed she had fixed the situation by calling the Ritz Carlton and alerting them of the error.  See Thompson Mem. at 6-7.

Finally, Fathom argues that during her tenure at the company, Thompson made unauthorized purchases at the Apple Store with her corporate American Express card, and never reimbursed Fathom for these purchases.  Countercl. ¶¶ 87-92.  Fathom additionally claims that when her relationship with the company ended in March 2008, Thompson refused to return Fathom's laptop and other company property, despite Fathom's repeated requests.  Id. ¶ 98.  Thompson again argues that all of the purchases, and her ownership of the laptop, were authorized by Fathom.  See Thompson Mem. at 7-8.

On October 27, 2008, Thompson filed a four-claim complaint seeking unpaid overtime wages and claiming failure to continue health insurance coverage pursuant to the Fair Labor Standards Act and other D.C. wage and hours laws.  See Compl. ¶¶ 40-64.  With its January 30, 2009 answer, Fathom filed a two-count counterclaim against Thompson.  Count one alleges that Thompson converted Fathom's property by (i) paying herself more than what was approved by

Fathom; (ii) failing to pay her portion of her health insurance premiums; (iii) misappropriating money from Fathom's Pay Pal account to her personal bank account; (iv) making unauthorized charges and purchases on her corporate American Express card without reimbursing Fathom for the same; and (v) failing to return company property upon her termination.  Countercl. ¶ 105.  Count two alleges that Thompson breached her fiduciary duty to Fathom through most of the actions alleged in count one, as well as by creating false time records.  Id. ¶ 111.

Now before the Court is Thompson's motion to dismiss, or in the alternative, for summary judgment on the counterclaims.  Thompson argues that Fathom's conversion claim should be dismissed because (i) she lacked the intent required for conversion, especially in regards to the corporate American Express charges at the Ritz Carlton, (ii) she was explicitly authorized to make payments to herself from Fathom's bank account or Pay Pal account and to make purchases at the Apple Store, and (iii) she paid her health insurance premiums and returned company property consistent with Fathom's authorization.  Thompson Mem. at 10.  Finally, Thompson argues that the breach of fiduciary duty claim also fails because, although she owed a fiduciary duty to Fathom as an employee, she did not breach this duty, as Mitchell authorized and was on notice of all her actions.  Thompson Reply at 15-16.

## STANDARD OF REVIEW

Thompson has moved to dismiss Fathom's counterclaims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment.  When, on a Rule 12(b)(6) motion, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P.

12(d). Because Thompson submitted matters outside the pleadings, the Court must treat Thompson's motion as one for summary judgment.[1]

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to

---

[1] Thompson's memorandum in support of her motion is accompanied by her affidavit, which itself is supported by 25 exhibits. Her reply includes an additional ten exhibits. Fathom argues that the Court should decline to consider Thompson's motion for summary judgment and limit its review to the facts alleged in Fathom's counterclaims, pursuant to Rule 12(b)(6), because some of the exhibits accompanying Thompson's affidavit constitute unauthenticated hearsay. See Fathom Opp'n at 6-7. For the purposes of summary judgment, affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). Although parts of Thompson's submission may not conform to the requirements of Rule 56, the Court does not at this time find that the documents are, as a whole, inadmissible. For present purposes, the Court will simply disregard the non-complying portions of Thompson's affidavit. See Williams v. Dodaro, 576 F. Supp. 2d 72, 77 n.2 (D.D.C. 2008).

the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

By relying on numerous documents outside of the pleadings, Thompson has converted her motion to dismiss into a motion for summary judgment. Pursuant to Rule 12(d), if a motion to dismiss under Rule 12(b)(6) is converted to a motion for summary judgment, "all parties must be given a reasonable opportunity to present all the material that is pertinent" to the motion for summary judgment. "Pre-discovery summary judgment motions are usually premature and hence disfavored." Bourbeau v. Johnathan Woodner Co., 600 F. Supp. 2d 1, 3 (D.D.C. 2009); see also Celotex, 477 U.S. at 322 (summary judgment is normally appropriate after "adequate time for discovery"); Tabb v. District of Columbia, 477 F. Supp. 2d 185, 188 n.1 (D.D.C. 2008) (noting that a pre-discovery summary judgment motion "usually is a disfavored practice"). In this case, Thompson's motion for summary judgment was filed prior to discovery. The only available testimonial evidence regarding the facts of the case is in the form of declarations and affidavits by Thompson, Mitchell, and one witness. The question, then, is whether the record now before the Court is sufficient to warrant summary judgment on Fathom's counterclaims at this early stage in the proceedings.

According to Thompson, the record is sufficiently complete for the Court to rule in her favor. Thompson Reply at 11. She argues that pre-discovery summary judgment is appropriate

in this case because the evidence she has produced is comprised mostly of Fathom's own business documents or those of Fathom's third party vendors.  Id.  She adds that Fathom has already conducted some "discovery" of its own documents, and has had ample time to compare its own documents with those submitted by Thompson.  Id.  Fathom responds that "in order to adequately and thoroughly address all of the material facts upon which Thompson relies in support of her motion for summary judgment – particularly the facts reflected in the various third-party documents attached to Thompson's memorandum – Fathom requires sufficient time to conduct discovery, especially third-party discovery."  Fathom Opp'n at 6.  Fathom outlines specific needs for discovery in its opposition brief and Mitchell's attached declaration, including the need for discovery outside of its own business documents.  See id. at 9; Mitchell Decl. ¶¶ 19, 23, 35-36.[2]  The Court has reviewed the affidavits, declarations, and exhibits submitted by the parties and agrees with Fathom that the record as it stands is lacking.

Given the paucity of the record, genuine issues of material fact remain to be resolved. Neither party has deposed the other.  For many of the alleged instances of conversion and breach of fiduciary duty, the Court is left with only the competing affidavit and declaration of Thompson and Mitchell.  The factual disputes that arise are material.  For example, to establish its

---

[2]  Thompson contends that the Court need not order additional discovery because Fathom has not filed an affidavit pursuant to Rule 56(f) showing that it is "conducting, or intends to conduct valuable discovery."  Thompson Reply at 12.  Thompson is correct that Fathom did not file a Rule 56(f) affidavit in response to Thompson's motion.  But other documents, including opposing motions, may suffice "to alert the district court of the need for further discovery" and therefore serve as the "functional equivalent of an affidavit."  First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988); see also Elliott v. Fed. Bureau of Prisons, Civ.A.No. 04-1702, 2006 WL 3826930 at *14-15 (D.D.C. Dec. 27, 2006).  In light of the fact that no discovery has taken place, Fathom's opposing motion and Mitchell's attached declaration are sufficient to show the need for further discovery at this time.  See First Chicago Int'l, 836 F.2d at 1380.

conversion counterclaim, Fathom must demonstrate the "unlawful exercise of ownership, dominion or control over [Fathom's] personal property . . . in denial or repudiation of [Fathom's] rights" to such property.  Furash & Co. v. McClave, 130 F. Supp. 2d 48, 58 (D.D.C. 2001).  But there is considerable dispute as to whether the funds transferred into Thompson's personal account, her corporate credit card charges, and her possession of Fathom's computer were unlawful or authorized.  For instance, Thompson argues Mitchell was put on notice of all transactions during their weekly meetings, Thompson Aff. ¶ 5, while Mitchell contends that these meetings did not occur until he became concerned about Thompson's job performance during her last year at Fathom, Mitchell Decl. ¶ 10.  Similarly, Thompson alleges that in March 2007, Mitchell authorized her to pay herself $1000 per week at their regular weekly meetings, Thompson Aff. ¶¶ 24-25, a pay raise Mitchell denies authorizing, Mitchell Decl. ¶ 22.  While Thompson presents some evidence as to one pay raise outside of those admitted by Fathom, the record Thompson presents as a whole contains little detail establishing any explicit authorization by Mitchell for the specific funds or property she asserts she lawfully controlled.  See, e.g., Thompson Ex. 32 (a June 2007 email from Mitchell noting that Thompson should let him know how much she would increase her pay to compensate for her additional hours, but without specifying the exact amount or Mitchell's approval of that amount).  A similar analysis applies to Fathom's breach of fiduciary duty counterclaim, which turns on the same authorization issues as the conversion counterclaim, as well as whether Thompson complied with Fathom's timekeeping procedures.  Compare Thompson Aff. ¶¶ 13-14 (claiming that Mitchell authorized Thompson to keep track of her hours in Excel spreadsheets), with Mitchell Decl. ¶¶ 15-17 (denying Mitchell authorized Thompson to use any timekeeping methods other than Fathom's own timekeeping

database).

On summary judgment, all reasonable inferences must be drawn in favor of the non-moving party.  See Anderson, 477 U.S. at 255.  Without adequate discovery, summary judgment is usually not appropriate, even when a non-movant relies on only an affidavit to present genuine issues of material fact.  Homes-Martin v. Leavitt, 569 F. Supp. 2d 184, 208 (D.D.C. 2008); see also 3D Global Solutions, Inc., v. MVM, Inc., 552 F. Supp. 2d 1, 6 n.2 (D.D.C. 2008) (noting that "a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different.").  Consequently, drawing all reasonable inferences in Fathom's favor, Fathom has presented sufficient evidence to defeat summary judgment against its conversion and breach of fiduciary duty counterclaims at this early stage of the proceedings.

## CONCLUSION

Summary judgment on Fathom's counterclaims is premature at this point of the proceedings because genuine issues of material fact remain to be resolved.  Accordingly, Thompson's summary judgment motion will be denied without prejudice.  At the close of discovery, either party may file a new motion for summary judgment.  A separate order has been issued today.

**SO ORDERED.**

                                            /s/
                                     JOHN D. BATES
                                 United States District Judge

Dated:     June 18, 2009